**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **1. Saudi L. Rodgers,** | ) | |
| **an individual,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No.** 20-cv-169-KEW |
| | ) | |
| **1.  REFRESCO U.S., INC.** | ) | |
| **a domestic for profit Business corp.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | **ATTORNEY LIEN CLAIMED FOR** |
| | ) | **THE FIRM** |

## COMPLAINT

**COMES NOW** the Plaintiff, Saudi Rodgers ("Plaintiff"), through his attorneys of record, Charles C. Vaught and Jessica N. Bailey of *Armstrong & Vaught, P.L.C.* and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), against Refresco U.S., Inc. In support thereof, Plaintiff hereby states and alleges as follows:

## JURISDICTION AND VENUE

1.  Plaintiff was, at all times relevant to this cause of action, employed by Defendant within the Eastern District of Oklahoma.

2.  Plaintiff was, at all times relevant to this cause of action, domiciled in and a citizen of the State of Oklahoma.

3.  Defendant is, and was at all times relevant to this action, an employer as defined by Title VII.

4.  Defendant does, and did at all times relevant to this action, employ in excess of fifteen (15) employees.

5.   Defendant is, and was at all times relevant to this cause of action, a domestic for-profit business corporation.

6.  The acts and/or omissions giving rise to this lawsuit occurred in Fort Gibson, Muskogee County, State of Oklahoma.

7.  Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, this Court has jurisdiction over the parties and the subject matter of this action, because the action arises under the laws of the United States.

8.  Pursuant to 28 U.S.C. § 1391(b), this action properly lies in the Eastern District of Oklahoma, because a substantial portion of the events or omissions giving rise to this claim occurred in the Eastern District of Oklahoma.

9.  Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC"). Subsequently, Plaintiff submitted a Charge of Discrimination to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on March 11, 2020.  A copy of the Notice of Right to Sue is attached hereto as Exhibit 1 and is incorporated by reference as though fully set forth herein.

10. Plaintiff instituted this action within 90 days of his receipt of the aforementioned Notice of Right to Sue.

## OPERATIVE FACTS

11. Plaintiff was hired by Defendant in May of 2018 as a Blender.

12. In August of 2018, Plaintiff was approached by David Webb, Manager of Operations, and asked if he would be interested in becoming a Team Lead in the processing department. After Plaintiff informed Mr. Webb that he was interested, Plaintiff had to complete a Supervisory course at Indian Capital Technology Center ("ICTC"). Plaintiff started classes in October of 2018.

13. Mr. Webb announced to Plaintiff's co-workers that Plaintiff would be their new lead soon. This created hostility between Plaintiff and his white co-workers.

14. Following this announcement, Plaintiff was subjected to racially motivated harassment and disparate treatment. A non-exclusive, relevant examples are, as follows:

   a. In November of 2018, Plaintiff's workstation was vandalized by co-workers. They wrote the word "nigger" on the lid of his blender and "Saudi sucks cock" on the side. Plaintiff reported the vandalism to Antonio Lollis, Team Lead, and Karen Smith, Supervisor, who both saw the writing. After watching the security camera footage for approximately ten minutes, Ms. Smith told Plaintiff she did not have all day and stopped. Human Resources was never informed of the incident. Subsequently, Plaintiff reported the incident to Mike Miller, Human Resource Manager, himself. No investigation was done.

   b. In December of 2018, Brian Sallee, Co-Worker, and Jeff Thompson, Team Lead, used the company computer to download Plaintiff's background regarding his felony conviction. They proceeded to spread copies of the felony around the plant while telling people they were going to get Plaintiff fired so he would not become a team lead. Plaintiff reported the incident to HR, but nothing was done.

   c. Mr. Webb approached Plaintiff in December of 2018 and asked if he would be a trainer for the new employees. Following Plaintiff's acceptance, Mr. Sallee went to Mr. Webb claiming Plaintiff called Kamonie Carey ignorant during training. After an investigation, the report was found to be false. However, Plaintiff still lost his position as trainer.

3

    d.  Plaintiff finished his classes at ICTC in December of 2018. No one from Refresco attended the graduation, despite assurance from Mr. Miller that someone from the company would be there. Further, representatives of Refresco attended the graduations of Plaintiff's co-workers.

    e.  On several occasions when Team Leads were not working, Plaintiff was given the duty of acting as Team Lead. However, his white co-workers refused to listen to him.

    f.  On several occasions, Plaintiff noticed that the company's attendance policy was not being applied equally and fairly amongst all employees.

15. Plaintiff spoke with Mr. Miller on several occasions regarding the harassment and disparate treatment. Mr. Miller's response continued to be that Plaintiff was "overthinking the situation" and if Plaintiff wanted to be a Team Lead, he would have to "overlook some people and the things they do."

16. Towards the end of December 2018, Defendant gave the Team Lead position that Plaintiff was up for to Darell Durant, a white co-worker, despite not being eligible. Plaintiff met with Mr. Miller regarding Mr. Durant's eligibility given that Mr. Durant had only been with the company full-time for four months, not the required six-months. Further, Mr. Durant was not required to attend the class at ICTC like Plaintiff was.

17. Defendant announced Mr. Durant's promotion on January 22, 2019. Plaintiff promptly notified Mr. Miller that he had filed intake paperwork with the Equal Employment Opportunity Commission.

18. On February 18, 2019, Clay Dobbs, a white co-worker, asked a work related question in the presence of David Bird, Process Supervisor, Marcus Shine, April Emory and Plaintiff. Plaintiff answered the quest and Mr. Dobbs became irate. When Mr. Dobbs approached Plaintiff in an threatening manner, Plaintiff requested that Mr. Dobbs not come any closer. Mr. Bird stepped in to diffuse the situation but Mr. Dobbs continued to yell threats at Plaintiff.

19. Plaintiff, Mr. Bird and Mr. Shine were standing in the hall following the altercation. Mr. Dobbs walked by and called Plaintiff "boy." Plaintiff immediately told Mr. Dobbs that "boy" was derogatory and that it would not be tolerated. Mr. Dobbs was restrained by Todd Fritz, Supervisor, and taken to HR.

20. Later that day, Plaintiff was called into HR and given a write up for the incident. However, Plaintiff refused to sign the write up since no witnesses were interviewed. Mr. Byrd was the only one interviewed and he blamed Plaintiff for the incident as well. HR then interviewed Mr. Shine and Ms. Emory about the incident and Plaintiff's write up was dropped.

21. On March 7, 2019, Mr. Byrd informed Plaintiff that he had six points on his attendance record. Plaintiff questioned Mr. Byrd's records since Plaintiff had brought in doctor's notes for every absence. Plaintiff then went to Mr. Miller regarding the absences and points given for seeking mental health treatment due to the harassment at work. Plaintiff was given one point for every day he missed, despite his white co-workers not receiving points for tardiness or absences.

22. During their meeting, Mr. Miller became short and aggressive with Plaintiff, stating that it was at the supervisors discretion. Plaintiff informed Mr. Miller that discretion could be viewed as discrimination when not applied equally to all employees. At the conclusion of the meeting, Plaintiff felt as though Mr. Miller could no longer help him and requested the name and contact information for Mr. Miller's supervisor. Mr. Miller refused.

23. Later that day, Mr. Miller called Plaintiff back into his office and informed Plaintiff that he was becoming a "disgruntled employee because of [his] attitude and complaints."

24. On March 8, 2019, Plaintiff was called into Mr. Miller's office for a meeting. During that meeting, Mr. Miller informed Plaintiff that he was receiving a written warning for being a disgruntled employee. Plaintiff asked why the verbal warning stage was skipped. Mr. Miller responded that verbal warnings were discretionary. Plaintiff informed Mr. Miller that he felt he was being retaliated against for his complaints, the EEOC intake and asking for the contact information for Mr. Miller's supervisor. Plaintiff refused to sign the written warning.

25. On March 15, 2019, Plaintiff was informed by Mike LNU, Maintenance, that his attendance points after walking off the job and being a no call no show for seven days because Mr. Miller went to Jeremiah LNU, Plant Manager, to get them removed so he could return to work. Plaintiff approached Jeremiah about the attendance policy not being applied equally amongst the employees. Further, Plaintiff informed Jeremiah that Mr. Miller would not give him the contact information for his supervisor. Jeremiah told me that he would get the information for me. Plaintiff requested that Mr. Miller give him the information. Mr. Miller finally gave Plaintiff the contact information.

26. On April 13, 2019, a line filler called an African American employee an "monkey" to Mica Sumpter, Co-Worker. Ms. Sumpter was offended and reported the comment to Ms. Smith. However, nothing was done so Plaintiff took the complaint to Jeremiah.

27. On April 23, 2019, Plaintiff was approached by Jordan Ousley, Co-Worker, and informed that him and Jeremiah Griffin, Co-Worker, were approach by Ms. Smith and Mr. Fritz about writing a false report regarding Plaintiff in order to fire him. When both Mr. Ousley and Mr. Griffin refused, Ms. Smith and Mr. Fritz told lies about Plaintiff to try and coerce the employees to give in and write the report. Neither employee gave in.

28. On May 7, 2019, Plaintiff was called into HR by Mr. Miller and another supervisor. Plaintiff was questions about touching Wyneema Butler's, a co-worker, hair. Plaintiff, not understanding where the questioning was going, admitted to touching her hair and apologized if he offended her. Plaintiff was then informed that it was not about sexual harassment, but assault and battery. Plaintiff denied assault and battery against his co-worker, and let them know that there Mr. Shine, Ms. Emory, Tina Raines, Co-Worker, and Dewayne White were all present at the time that this assault and battery was said to have taken place.

29. Mr. Miller suspended Plaintiff for three days pending an investigation. However, none of the witnesses were questioned.

30. Following his suspension, Plaintiff was contacted by Mr. Miller and asked to come into the office to discuss the findings of the investigation. Feeling as though there was too much hostility and the harassment and discrimination had become intolerable, Plaintiff informed Mr. Miller that he would not come into the office. Mr. Miller refused to give him any information via telephone. Plaintiff then informed Mr. Miller that he would not be returning to work due to the harassment, retaliation and discrimination.

## FIRST CLAIM

### (RACE DISCRIMINATION IN VIOLATION OF TITLE VII)

31. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state, as follows:

32. That, as a member of a protected class, to wit: African-American, Plaintiff is protected from discrimination by the provisions of Title VII.

33. That the hostile work environment Plaintiff was subjected to was a direct result of discrimination on the basis of Plaintiff's race, to wit: African-American, as prohibited by Title VII.

34. That Plaintiff was unfairly treated and that the motivating reason for this treatment is based on his race, to wit: African-American, as prohibited by Title VII.

35. That Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice by Plaintiff of the circumstances.

36. That the conduct complained of constitutes illegal race discrimination in violation of Title VII.

37. By and through, but not limited to, the actions described herein, Defendant has violated Title VII.

38. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

39. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

40. Plaintiff has been injured by this discrimination and is entitled to compensatory and punitive damages and any other damages available pursuant to Title VII.

## SECOND CLAIM
### (RETALIATION IN VIOLATION OF TITLE VII)

41. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state, as follows:

42. Plaintiff followed the proper procedures as an employee of Defendant in exercising his federally protected right to report the race discrimination he was being subjected to as an employee in Defendant's employ.

43. Plaintiff reported the discrimination he was subjected to as an employee to proper agents to receive such complaints.

44. As a direct result of Plaintiff's complaints and EEOC charge, Defendant altered the terms, conditions and/or privileges of Plaintiff's employment by, among other retaliatory acts, terminating Plaintiff's employment for pretextual reasons.

45. As a direct result of Plaintiff's complaints, Defendant retaliated against Plaintiff for exercising his federally protected right to report the sexual harassment and race discrimination he was subjected to in the workplace.

WHEREFORE, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, and punitive damages incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: *s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
**Jessica N. Vaught, OBA #33114**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
cvaught@a-vlaw.com
jvaught@a-vlaw.com
***Attorneys for Plaintiff***