IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAUDI L. RODGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-169-KEW |
| ) | |
| REFRESCO U.S., INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Combined Motion and Memorandum of Law in Support of Motion to Dismiss (Docket Entry #8). Plaintiff initiated this action on June 1, 2020 by filing his Complaint. The parties consented to the undersigned judge on October 29, 2020.

In the Complaint, Plaintiff Saudi Rodgers ("Plaintiff"), alleges he is an African American who was employed as a blender by Defendant Refresco U.S., Inc. ("Refresco"), located in Fort Gibson, Oklahoma, from May of 2018 until May of 2019. (Complaint at ¶¶ 6, 11, 32, 28-30). Plaintiff contends that in August of 2018, he was approached by David Webb, Manager of Operations, about becoming a Team Lead in Refresco's processing department. Plaintiff was interested in the position. One of its requirements was the completion of a supervisory course at Indian Capital Technology Center ("ICTC"). Plaintiff alleges he began the course in October of 2018. (Complaint at ¶ 12). He asserts, however, that

when his white co-workers learned he would soon be the new Team Lead, they became racially hostile to him. (<u>Complaint</u> at ¶ 13).

The examples provided by Plaintiff in the Complaint of "racially motivated harassment and disparate treatment" include:

> a. In November of 2018, Plaintiff's workstation was vandalized by co-workers. They wrote the word "ni[**]er" on the lid of his blender and "Saudi sucks co[*]k" on the side. Plaintiff reported the vandalism to Antonio Lollis, Team Lead, and Karen Smith, Supervisor, who both saw the writing. After watching the security camera footage for approximately ten minutes, Ms. Smith told Plaintiff she did not have all day and stopped. Human Resources was never informed of the incident. Subsequently, Plaintiff reported the incident to Mike Miller, Human Resource Manager, himself. No investigation was done.
>
> b. In December of 2018, Brian Sallee, Co-Worker, and Jeff Thompson, Team Lead, used the company computer to download Plaintiff's background regarding his felony conviction. They proceeded to spread copies of the felony around the plant while telling people they were going to get Plaintiff fired so he would not become a team lead. Plaintiff reported the incident to HR, but nothing was done.
>
> c. Mr. Webb approached Plaintiff in December of 2018 and asked if he would be a trainer for the new employees. Following Plaintiff's acceptance, Mr. Sallee went to Mr. Webb claiming Plaintiff called Kamonie Carey ignorant during training. After an investigation, the report was found to be false. However, Plaintiff still lost his position as trainer.
>
> d. Plaintiff finished his classes at ICTC in December of 2018. No one from Refresco attended the graduation, despite assurance from Mr. Miller that someone from the company would be there. Further, representatives of Refresco attended the graduations of Plaintiff's co-workers.
>
> e. On several occasions when Team Leads were not working, Plaintiff was given the duty of acting as Team

    Lead. However, his white co-workers refused to listen to him.

    f. On several occasions, Plaintiff noticed that the company's attendance policy was not being applied equally and fairly amongst all employees.

(<u>Complaint</u> at ¶ 14a-f).

Plaintiff contends that on several occasions he reported concerns regarding the harassment and treatment he experienced from his co-workers to the HR Manager Mike Miller ("Miller"). Miller allegedly told Plaintiff he was "overthinking the situation" and he would have to "overlook some people and the things they do." According to Plaintiff, at the end of December of 2018, he learned the Team Lead position would be filled by one of his white co-workers who had not completed the required ICTC class and who had not worked for Refresco long enough to qualify for the position. Plaintiff asserts that after his co-worker's promotion was announced in January of 2019, he notified Miller that he had filed paperwork with the Equal Employment Opportunity Commission ("EEOC"). (<u>Complaint</u> at ¶¶ 15-17).

Plaintiff also asserts that in February of 2019, he and a white co-worker had an altercation when the co-worker called him derogatory names. Plaintiff was called to HR, and based upon one witness interview, he received a write up for the incident. Once additional witnesses were interviewed, the write up was rescinded. (<u>Complaint</u> at ¶ 18-20).

Plaintiff alleges that in March of 2019, he spoke with Miller about points on his attendance record. Plaintiff was given a point for each day he missed, while his white co-workers did not receive points for tardiness or absences. Plaintiff described Miller's demeanor toward him as "short" and "aggressive," and he refused to provide Plaintiff with contact information for his supervisor. According to Plaintiff, Miller called him back to his office later that day, informing Plaintiff he was becoming a "disgruntled employee because of his attitude and complaints." Plaintiff alleges that the next day, he was called back to Miller's office again and received a written warning for being a disgruntled employee. Plaintiff informed Miller he believed he was retaliating against Plaintiff for his complaints, for his EEOC filing, and for asking for information about Miller's supervisor. Plaintiff refused to sign the written warning. (Complaint at ¶¶ 21-24).

Plaintiff maintains that in April of 2019, he reported an offensive comment made about another African American co-worker to his supervisor, and nothing was done about the complaint. Plaintiff also alleges that he was told by co-workers that a supervisor approached them to write a false report about Plaintiff so Refresco could fire him, but both employees refused. (Complaint at ¶¶ 26-27).

Plaintiff further alleges that he was suspended for three days in May of 2019 for touching a co-worker's hair. He denied

4

Miller's characterization of the incident as "assault and battery" and told him who was present when the incident occurred. Miller never interviewed the witnesses. He requested Plaintiff come meet with him about the investigation, and Plaintiff declined when Miller refused to disclose any information over the telephone. Plaintiff told Miller he would not return to work because of the harassment, retaliation, and discrimination. (Complaint at ¶¶ 28-30).

On October 1, 2019, Plaintiff presented his Charge of Discrimination to the EEOC and the Office of Civil Rights Enforcement for the Oklahoma Attorney General's Office. *See* Charge of Discrimination (Docket Entry #8-1). Plaintiff asserts that the EEOC issued a Notice of Right to Sue letter on March 11, 2020. (Complaint at ¶¶ 9-10).

Based on these allegations, Plaintiff asserts claims against Refresco under Title VII, §§ 2000 et. seq., including: (1) race discrimination based on disparate treatment and hostile work environment, and (2) retaliation based upon reports of discrimination and the filing of a charge of discrimination.

Through its motion to dismiss, Refresco asserts that Plaintiff's allegations of a constructive discharge, a hostile work environment, and any allegations supporting his claims for discrimination and/or retaliation that occurred prior to January 1, 2019, must be dismissed because Plaintiff failed to exhaust his

administrative remedies and the Court therefore lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) to consider them. Refresco further contends that Plaintiff's race discrimination claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6), because Plaintiff has failed to plead facts supporting the elements of his claim.[1]

As an initial matter, this Court notes the exhaustion of administrative remedies is no longer considered a jurisdictional issue. In *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir. 2018), the Tenth Circuit Court of Appeals determined that "our precedent that the filing of an EEOC charge is a jurisdictional prerequisite to suit is no longer correct." *Id*. at 1185. The court held that "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Id*. Here, the distinction is somewhat immaterial because Refresco has raised the exhaustion issue in its motion to dismiss. *See Smith v. Cheyenne Retirement Investors, L.P.*, 904 F.3d 1159, 1163-64 (2018) (recognizing the *Lincoln* decision as the state of the law in the Tenth Circuit and noting exhaustion was affirmatively raised in

---

[1] Other than as discussed herein, Refresco does not seek dismissal of Plaintiff's Second Claim – Retaliation in Violation of Title VII.

the defendant's motion to dismiss).

The principal purposes of the exhaustion rule are "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Id.* at 1164 (quotation omitted). The court is to "liberally construe" the allegations in the EEOC charge, but "'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.'" *Id.*, quoting *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (emphasis in original); *see also National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice[,]'" for which administrate remedies must be exhausted.). After receiving a notice of a right to sue from the EEOC, a plaintiff's court claim "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Smith*, 904 F.3d at 1164 (quotation omitted).

Refresco's first argument in its motion to dismiss is that Plaintiff failed to exhaust his administrative remedies regarding his allegations of constructive discharge. Refresco contends that because Plaintiff failed to allege that he was constructively

7

discharged in the charge of discrimination that his claim must be dismissed for failure to exhaust. Plaintiff asserts that because the charge references his discharge, his allegations are specific enough to encompass the circumstances surrounding his discharge and to have been included in the EEOC's investigation.

Although Refresco is correct that courts have found that a constructive discharge claim involves a discrete and identifiable act which requires an administrative charge, both of the cases cited by Refresco involve situations where the plaintiffs did not include the discharge in the charge of discrimination. Here, Plaintiff's charge includes references to Plaintiff's discharge in June of 2019. *See* Charge of Discrimination (Docket Entry #8-1) ("According, to Mike Miller, Human Resources, in June 2019 I was discharged as a disgruntled employee."). Based upon the information contained in the charge, this Court finds that the reference to a discharge should have triggered an inquiry into the circumstances surrounding Plaintiff's discharge from Refresco. This Court therefore finds that Plaintiff's allegations of constructive discharge are within the scope of the charge and thereby exhausted.

Refresco next argues that Plaintiff's claim of a hostile work environment is subject to dismissal for failure to exhaust because Plaintiff did not include any facts in his charge suggesting a hostile work environment claim. Plaintiff responds that his charge

does include such facts, as he alleged discrimination based on racial hostility and for retaliation based on his complaints.

To allege a hostile work environment claim, the charge should state facts asserting a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [a plainitff's] employment and create an abusive working environment." *Davis v. U.S. Postal Service*, 14 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted). In the text portion of his charge, Plaintiff referenced circumstances where "coworkers wrote 'nig.er and Saudi sucks di.k" on my work station, and [a coworker] commented 'nig.er' throughout the work area frequently." Charge of Discrimination (Docket Entry #8-1). Plaintiff also referenced how he was treated differently from other employees because of his race and retaliated against for his complaints about such treatment. *Id*. This Court again finds that the allegations contained in Plaintiff's charge are enough to suggest a hostile work environment claim by Plaintiff.

Moreover, Refresco makes a more general argument that Plaintiff's claims of discrimination and retaliation are limited to the time period beginning on January 1, 2019. Refresco contends that Plaintiff indicated in the charge of discrimination that the earliest discrimination occurred in January of 2019 and the latest discrimination occurred in June of 2019, and Plaintiff did not "check the box" that the alleged discrimination was a continuing

9

action. Specifically, Refresco references several of Plaintiff's allegations from the Complaint that include conduct or incidents which occurred as early as November of 2018. Refresco contends that because Plaintiff did not check the "continuing action" box and the charge does not include any events prior to January of 2019, Plaintiff has failed to exhaust those allegations of discrimination and/or retaliation that occurred prior to January of 2019.

Plaintiff responds that the relevant time period included 300 days before the filing of the charge on October 1, 2019, which includes allegations as far back as December 5, 2018. He maintains that incidents prior to January 1, 2019, are included in the text of the charge, although they are not referred to directly by date. He further asserts that the allegations supporting his hostile work environment claim are different from claims involving discrete acts, and it may include actions that occurred outside the 300-day period if all of the complained of acts collectively constitute one "unlawful employment practice."

As an initial matter, "'[t]he failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box.'" *Johnson v. Wal-Mart Stores East*, LP, 2017 WL 3586710, at *4 (N.D. Okla., Aug. 18, 2017), quoting *Jones*, 502 F.3d at 1186. The presumption, however, "'may be rebutted . . . if the text of the charge clearly sets forth the

10

basis of the claim.'" *Id*. Here, the text of Plaintiff's charge includes references to alleged racial and other offensive conduct toward Plaintiff by his co-workers that occurred prior to January 1, 2019, and it also references that Plaintiff's white co-worker was promoted over Plaintiff to the Team Lead position.

Plaintiff filed his charge on October 1, 2019, with both the Office of Civil Enforcement and the EEOC, thus triggering the 300-day provision and resulting in a time period for incidents of discrimination or retaliation occurring between December 5, 2018-October 1, 2019. *See Salemi v. Colorado Public Employees' Retirement Assoc.*, 747 Fed. Appx. 675, 688 (10th Cir. 2018) ("[A] plaintiff fails to timely exhaust h[is] administrative remedies relative to a discrete incident of discrimination or retaliation that occurs more than 300 days before [h]e files a charge with the EEOC."). Here, several of the allegations made by Plaintiff in paragraphs 14 and 15 of the Complaint do not include a date as to when they occurred. At this stage of the proceedings, the Court will not dismiss them as unexhausted.

Plaintiff maintains that all the allegations identified by Refresco support his hostile work environment claim based on race and should be considered as one "unlawful employment practice." Regarding hostile work environment claims, the Tenth Circuit explained their treatment in *Hansen v. SkyWest Airlines*, 844 F.3d 914 (10th Cir. 2016):

11

> "[H]ostile work environment claims are different. A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' Thus, [t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day. Rather, it takes place over time, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Consequently, [i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. The court's task then, is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."

*Id*. at 923, quoting *Morgan*, 536 U.S. at 110, 115, 117, and 120 (quotation marks omitted).

At this juncture of the proceedings, the Court finds that the allegations contained in Plaintiff's Complaint in paragraphs 14a-f and paragraph 15 may be considered part of the same actionable hostile work environment practice, as Plaintiff has alleged that they are examples of his being "subjected to racially motivated harassment and disparate treatment." Moreover, even if this Court determined Plaintiff had failed to satisfy the timeliness requirement as to certain of the allegations, this would not preclude Plaintiff from referring to the prior acts to support a timely claim. *See Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using prior acts as background evidence in support of a timely claim.").

12

Lastly, Refresco alleges that Plaintiff's race discrimination claim fails under Fed. R. Civ. P. 12(b)(6), because Plaintiff fails to plead facts to support the claim. Plaintiff responds that he has sufficiently pleaded a *prima facie* case of race discrimination.

*Bell Atlantic* changed the legal analysis applicable to dismissal motions filed under Fed. R. Civ. P. 12(b)(6), creating a "refined standard" on such motions. *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citation omitted). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atlantic*, 550 U.S. at 570. The Supreme Court did not parse words when it stated in relation to the previous standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic*, 550 U.S. at 546.

The Court of Appeals for the Tenth Circuit has interpreted the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from

13

conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The *Bell Atlantic* case, however, did not intend the end of the more lenient pleading requirements of Fed. R. Civ. P. 8(a)(2). *Khalik*, 671 F.3d at 1191. Rather, in *Khalik*, the Tenth Circuit recognized the United States Supreme Court's continued endorsement of Rule 8's "short and plain statement" requirement in the case of *Erickson v. Pardus*, 551 U.S. 89 (2007), wherein the Supreme Court found "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*. at 93.

To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) qualifications for the position at issue; (3) an adverse employment action; and (4) the adverse employment action "occurred under circumstances which give rise to an inference of unlawful discrimination." *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019), quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000).[2] Refresco concedes that Plaintiff belongs to a protected class. It challenges whether Plaintiff has

---

[2] Although "the 12(b)(6) standard does not require that Plaintiff establish a *prima facie* case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1191, citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

alleged a plausible claim of race discrimination under the second, third, and fourth prongs of the *prima facie* case.

Having reviewed the Complaint, the Court finds Plaintiff's allegations of race discrimination state a plausible claim for relief. First, Plaintiff pleaded facts making it plausible that he was qualified for his position as a blender. He was hired for the position, completed coursework to be promoted to another position, and provided training to other employees for his current position. (Complaint at ¶¶ 11, 12, 14c). Second, Plaintiff has adequately pleaded that he suffered an adverse employment action. Plaintiff alleges he was constructively discharged. (Complaint at ¶ 30); *see Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008) ("Even if an employee resigns, the plaintiff may still satisfy the adverse employment action requirement by demonstrating that he was constructively discharged."). Finally, Plaintiff has sufficiently alleged that he was treated differently from similarly situated co-workers based on his race. He alleged that although Refresco attended the graduations of his co-workers from ICTC, no one attended his graduation, the attendance policy was not applied equally for all employees, and Plaintiff's white co-worker was promoted to the Team Lead position even though he had not taken the required ICTC coursework and had not been employed for the required six months. (Complaint at ¶¶ 14d, 14f, 16, 21).

IT IS THEREFORE ORDERED that Defendant's Combined Motion and Memorandum of Law in Support of Motion to Dismiss (Docket Entry #8) is hereby **DENIED.**

IT IS FURTHER ORDERED that Refresco shall file an answer to the Complaint no later than **AUGUST 25, 2021.**

IT IS SO ORDERED this 11th day of August, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE